UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. BURWELL and
TOWERS WATSON DELAWARE
INC.,

        Plaintiff,

-vs-

AON plc, AON CORPORATION and
AON RISK SERVICES CENTRAL,
INC.,

        Defendants.

_____/

Case No.

Hon.

## COMPLAINT

Plaintiffs Michael J. Burwell ("Burwell") and Towers Watson Delaware Inc. ("TWD") (collectively, "Plaintiffs"), by and through their undersigned counsel and pursuant to Rule 57 of the Federal Rules of Civil Procedure, bring this Complaint against Defendants Aon plc, Aon Corporation, and Aon Risk Services Central, Inc. ("Aon Risk Services") (collectively, "Aon" or "Defendants") and allege as follows:

## NATURE OF THE ACTION

On August 21, 2017, a press release announced the appointment of Plaintiff Burwell as the new Chief Financial Officer ("CFO") of Willis Towers Watson (NASDAQ: WLTW) ("WTW") effective October 2, 2017. Burwell is replacing

current CFO Roger Millay, who is retiring from WTW on October 2, 2017. A copy of the press release is attached hereto and incorporated by reference as Exhibit A. One of Burwell's partners at PricewaterhouseCoopers, LLP ("PwC") recommended Burwell to WTW.

John Haley, WTW's Chief Executive Officer ("CEO"), publicly commented on Burwell's appointment:

> We are excited to have Mike join our leadership team at an important point in our company's evolution. Mike understands managing, leading and driving results in a complex, global company with a strong focus on clients. I am confident that his expertise in finance, transactions and transformation is well suited to guide our long-term growth and remaining integration efforts – allowing us to achieve our full potential as Willis Towers Watson.

*See* Exhibit A. In connection with its hiring of Burwell, WTW filed the requisite Form 8-K with the United States Securities and Exchange Commission.

Burwell, a graduate of Michigan State University and a Certified Public Accountant, resigned from PwC on August 14, 2017 to accept the CFO role at WTW. Following his resignation and at PwC's request, Burwell has been on leave and has not been performing any work for PwC clients, including Aon, for the last month or so.

Burwell, who had been a partner at PwC, has 31 years of finance and professional services experience. During the last decade alone, he served in a variety of leadership roles at PwC, including Head of Global Transformation,

Chief Operating Officer, Chief Financial Officer, and Head of Transaction Services for PwC in the United States.

As a PwC partner, Burwell provided consulting services to numerous companies in numerous industries, including Aon, a competitor of WTW. After Burwell promptly notified PwC that he had accepted an offer to become the new CFO at WTW, PwC requested that Burwell acknowledge his continuing obligation to maintain the confidence of and not disclose Aon's confidential and proprietary information. Burwell readily provided written acknowledgement that he will not use, disclose or divulge any of Aon's confidential and proprietary information to a third party. <u>Burwell has not divulged and will not divulge any of Aon's confidential and proprietary information, including trade secrets to the extent they exist</u>.

For some unexplained reason, Burwell's assurances to PwC are not enough to satisfy Aon. On or about September 18, 2017, Burwell and WTW received a letter from counsel for Defendant Aon plc dated September 15, 2017, a copy of which is attached hereto and incorporated by reference as Exhibit B. According to Aon's lawyers, unless a deal satisfying Aon is reached prior to October 1, 2017, Aon will file suit to enjoin Burwell from becoming WTW's new CFO and seek damages, thus severely disrupting and harming the financial operations of one of its principal competitors.

It is undisputed that Burwell is not and never has been an Aon employee and that no contractual privity exists between these parties. If Aon had wanted Burwell to be bound by a non-competition agreement that would prevent him, a partner working for a consulting firm, from accepting employment with one of Aon's competitors, then it had the chance to try and obtain one while Burwell was providing consulting services. Aon chose not to do it then and it certainly cannot create such an obligation now by presumptively speculating that if Burwell becomes WTW's new CFO, he will inevitably disclose Aon's trade secrets, as generally categorized in the September 15 letter.

Based on this meritless speculation, Aon seeks to prevent and/or delay Burwell from entering into an employment relationship with WTW. Such action on Aon's part would violate the express language of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831 *et seq.* ("DTSA") which allows for injunctive relief to prevent actual or threatened misappropriation of a trade secret provided that the court's order does not

> . . . prevent a person from **entering into an employment relationship**, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and **not merely on the information the person knows**;"

18 U.S.C. § 1836(b)(3)(A)(i)(I) (emphasis added). There is nothing to suggest that Burwell has engaged in any improper or deceitful conduct or that he cannot be

- 4 -

trusted with Aon's confidential and proprietary information, or the confidential and proprietary information of the many other PwC clients he provided services to.

Moreover, in the September 15 letter, Aon's counsel also brazenly threatened that it will be unethical for Burwell to become WTW's CFO and that his CPA license in Michigan could be in jeopardy if he does so. *See* Exhibit B. There is absolutely nothing in the rules governing CPAs licensed in Michigan that prevents Burwell from becoming WTW's CFO. To suggest in a letter to the senior legal officers of Burwell's new employer that he has acted unethically without a shred of evidence, is nothing short of a reckless and outrageous attempt to interfere with his employment.  By the actions described above, Aon is engaging in unfair competition.

In light of Aon's claim that Burwell's employment by WTW will cause the inevitable disclosure of its trade secrets (which Plaintiffs strongly disagree and deny), Plaintiffs now seek a declaratory judgment that Burwell's employment with WTW <u>will not</u> violate the DTSA and, accordingly, there is no legal obstacle to Burwell assuming his role as CFO of WTW on October 2, 2017.  This court should also reject Aon's effort to engage in unfair competition by turning a non-existent trade secret issue into a non-competition agreement and by creating a false ethical violation of Michigan's CPA rules in order to try and stop him from being gainfully employed in his chosen profession.

## PARTIES

1. Plaintiff Michael Burwell is a citizen of the State of Michigan residing at 2951 Chestnut Run Drive, Bloomfield Hills, Michigan 48302.

2. Plaintiff Towers Watson Delaware Inc. ("TWD") is a subsidiary of WTW. TWD is the legal entity that is to be Burwell's W-2 employer. Burwell has been assigned to work as a TWD employee at WTW's offices located at 26555 Evergreen Rd, Southfield, Michigan 48076.

3. Defendant Aon plc is a United Kingdom public limited company with its principal address located at the Aon Center, the Leadenhall Building, 122 Leadenhall Street, London, England EC3V 4 AN. Upon information and belief, Aon plc transacts business in the State of Michigan. The letter threatening Burwell if he goes to work for WTW in Michigan and threatening his CPA license was sent on behalf of Aon plc. *See* Exhibit B. As a PwC partner, Burwell worked on Aon-related matters from offices located in the State of Michigan.

4. Defendant Aon Corporation is a Delaware corporation with its principal address at 200 E. Randolph Street, Chicago, Illinois 60601. Upon information and belief, Aon Corporation transacts business in the State of Michigan. As a PwC partner, Burwell worked on Aon-related matters from offices located in the State of Michigan.

5. Defendant Aon Risk Services is an Illinois corporation with an office located at 3000 Town Center, Suite 3000, Southfield, Michigan 48075. As a PwC partner, Burwell worked on Aon-related matters from offices located in the State of Michigan.

## JURISDICTION AND VENUE

6. Count I of the complaint is brought under the DTSA, 18 U.S.C. § 1831 *et seq*. Accordingly, the Court has jurisdiction pursuant to 18 U.S.C. § 1331.

7. This Court has jurisdiction to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual controversy exists between the parties.

8. The Court has supplemental jurisdiction over Count II of the complaint for unfair competition pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. 1391(b).

## FACTUAL ALLEGATIONS

10. Plaintiff Burwell graduated from Michigan State University in 1986 with a Bachelor of Arts degree in business administration. He is licensed as a CPA in Michigan and New York. He has continuously resided and worked in Michigan since 1985.

11. Burwell has been at PwC for more than 30 years. During the last decade, he has served in numerous leadership roles that qualify him to be the next

CFO of WTW, including Head of Global Transformation, Chief Operating Officer, Chief Financial Officer, and Head of Transaction Services for PwC in the United States.

12. Beginning in September 2016, Aon engaged PwC to provide consulting services and Burwell was one of the PwC personnel assigned to this project. In connection with the assignment, Aon and PwC entering into a non-disclosure agreement governing the terms of the engagement. Burwell was not a signatory to that agreement and at no time did Aon insist that Burwell sign a non-competition agreement that would prohibit him from accepting employment with a competitor of Aon. There are no contractual provisions preventing Burwell from accepting employment with an Aon competitor.

13. Burwell worked on the project from inception until he announced his resignation in August 2017. During this short 11-month period, Burwell spent approximately eight hours on average per week on the Aon engagement, working at times from his home office in Michigan or PwC offices in Michigan. During this same time period, Burwell also: (i) was the Senior Relationship Partner with at least six major PwC clients; (ii) had ongoing projects with three other major PwC clients; and (iii) was working on numerous proposals for PwC unrelated to Aon.

14. Burwell is a subject matter expert in real estate and, having participated in a similar space restructuring undertaken by PwC, contributed his

experience to the Aon project team. Two other PwC partners led the overall engagement with Aon.

15. Burwell has no agreements with Aon. He has never been an employee of Aon, nor has he directly entered into any employment, non-disclosure, non-compete, or confidentiality agreement with Aon. His only association with Aon was his work on the consulting project described above in his capacity as a subject matter expert. In that role, at no time did he take on the duties or responsibilities of Aon's CFO.

16. On or about April 6, 2017, WTW announced that Roger Millay, its long-time CFO would be resigning at the close of the third quarter in 2017. A formal search to replace Millay began, during the course of which Burwell was recommended to WTW by one of his PwC partners. After an extensive series of interviews, Burwell was offered employment to become WTW's CFO. He received his offer letter from TWD, and he will be assigned to WTW's offices in Southfield, Michigan.

17. On or about August 14, 2017, Burwell notified PwC that he had accepted the CFO position at WTW and was resigning from the PwC partnership. Shortly thereafter, and in accordance with its regular protocols for departing employees, PwC took possession of Burwell's work laptop, files, notes, and electronically stored information, including such materials that might have been

associated with the Aon project. Burwell has not divulged any Aon confidential or proprietary information and is unaware of having any such information in his possession, custody or control.

18.  On or about August 18, 2017, PwC requested that Burwell confirm he would continue to abide by his client confidentiality obligations to Aon, which he did in writing. At the same time, PwC agreed to waive the six-month notice period that applied to Burwell and agreed to an end date of September 30, 2017, thereby allowing him to commence employment with WTW on October 2, 2017. PWC also indicated that they would have accepted Burwell ending employment at PWC even earlier at the end of August.

19.  At PwC's request, Burwell has not engaged in any PwC work since August 15, 2017 and as a result has had no access since that date to any confidential and proprietary information, including alleged trade secrets, of Aon or any other PwC clients.

20.  Both WTW and Burwell relied on PwC's waiver of the notice period. On August 21, 2017, WTW issued a press release (Exhibit A) naming Burwell as its new CFO. *See* www.willistowerswatson.com/en/press/2017/08/Willis-Towers-Watson-announces-new-Chief-Financial-Offier. WTW also filed the requisite Form 8-K with the SEC regarding the hiring of Burwell as its new CFO.

21. As CFO, Burwell's primary responsibilities will be to, among other things, provide strategic financial leadership for WTW's business; contribute to business strategy and operations; play a leading role in capital allocation, performance analysis, and incentives that drive profitable operations; and increase shareholder value by driving operational and financial goals. A copy of the specifications the CFO position is attached hereto and incorporated by reference as Exhibit C. These are not the same duties that Burwell performed as a part time consultant for Aon. The Operations, Real Estate, Technology, Marketing and Communications, and Strategic Development functions at WTW do not report directly or indirectly to the CFO; instead, these functions report to WTW's Chief Administrative Officer who in turn reports directly to CEO Haley.

22. In accordance with its regular hiring practices, WTW advised Burwell that its employees are required to honor their legal obligations to prior employers and established as a condition of his employment that he (i) not bring any confidential or proprietary business information with him to WTW and (ii) not reveal, use or disclose any such information, whether belonging to any prior employer or other third party, unless expressly authorized in writing.

23. On or about September 15, 2017, lawyers for Aon sent a letter to Burwell and the General Counsels of WTW and its subsidiary, Willis North America Inc. (Exhibit B). As set forth therein, Aon claims that Burwell received

access to Aon's trade secrets and confidential information during his consultancy and that his employment as the new CFO of WTW would necessarily result in the inevitable disclosure and misappropriation of Aon's trade secrets. Aon also claimed that Burwell's employment with WTW would be an ethical violation of the rules governing CPAs. Burwell is licensed as a CPA in Michigan and New York. Nothing in the September 15 letter suggests that Burwell cannot be trusted with Aon's information or that he has somehow acted deceitfully with respect to Aon. There is also nothing that explains how he would engage in unethical conduct as WTW's CFO.

24. In the September 15 letter, Aon identified the alleged trade secrets and confidential information it claims Burwell received during his PwC consultancy as Aon's overall financial model, financial targets, and business results; projects related to the restructuring initiative; planned changes to business models; details about cost savings initiatives; business acquisition pipeline; real estate strategy; outsourcing plans; information technology savings initiatives; and communications strategy. Prior to receiving this letter, WTW had no knowledge as to the substance of the consulting work that Burwell had performed for Aon, nor does it have any interest in knowing what he did for Aon.

25. At its request, Burwell provided written assurances to PwC that he will take all steps necessary to ensure Aon's information remains confidential and

- 12 -

that he will not use, disclose or divulge any such information to unauthorized persons or entities, including his future employer. In fact, it is a condition of his employment with WTW that he not disclose or use such information. In addition, WTW's employee Code of Conduct, which Burwell will be required to comply with, mandates compliance with confidentiality obligations arising out of his prior employment.

26. WTW has announced to the public and in its filings with the SEC that Burwell will assume the role of its new CFO on October 2, 2017. This role is vital to WTW's financial operations and the reporting of financial information to WTW's investors. In order to seamlessly maintain the financial operations of WTW, Burwell's start date as CFO was specifically planned to coincide with the retirement of the current CFO, Roger Millay.

## COUNT I

**DECLARATORY RELIEF
PLAINTIFFS HAVE NOT MISAPPROPRIATED
TRADE SECRETS NOR IS THERE A THREAT
TO MISAPPROPRIATE TRADE SECRETS
(Defend Trade Secrets Act—18 U.S.C. § 1836 et seq.)**

27. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

28. Based on the September 15, 2017 letter, there is an actual controversy subject to relief under 28 U.S.C. § 2201 *et seq*. regarding whether Burwell has

misappropriated or misused Aon's trade secrets, whether Burwell's pending employment as WTW's CFO threatens to result in the misappropriation or misuse of Aon's trade secrets for the benefit of WTW, and whether Aon, absent contractual privity with Burwell (*i.e.* there is no non-competition agreement), can stop Burwell from becoming WTW's CFO.

29. The Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b)(1) provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

30. A "trade secret" is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing … if the owner thereof has taken reasonable measures to keep such information secret; and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

31. In a civil action arising under the DTSA, the court may grant an injunction "to prevent any actual or threatened misappropriation described in paragraph (1) on such terms the court deems reasonable, *provided the order does not … prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows ….*" 18 U.S.C. § 1836(b)(3)(A)(i)(I) (emphasis supplied)..

32. Plaintiffs seek a declaration that Burwell has not misappropriated and/or misused Aon's trade secrets; that Burwell has not threatened to misappropriate and/or misuse Aon's trade secrets; that Burwell's employment by TWD in the capacity of WTW's CFO will not inevitably result in the future misappropriation of Aon's trade secrets; that Burwell has no obligations to Aon, contractual or otherwise, that prevent him from working as WTW's CFO; and that Aon may not prevent or delay Burwell's employment by TWD.

## COUNT II

## UNFAIR COMPETITION

33. Plaintiffs incorporate paragraphs 1 -26 as if fully set forth herein.

34. Aon and WTW are competitors.

35. Burwell is not bound by any form of restrictive covenant or non-competition agreement with Aon that otherwise prevents TWD from employing him as WTW's new CFO.

36. There is no lawful basis for Aon to prohibit Burwell from becoming employed by TWD to serve as WTW's new CFO.

37. There is no lawful basis for Aon to accuse Burwell of engaging in unethical behavior in order to threaten his licensure as a CPA in Michigan.

38. By threatening Burwell and WTW with legal action in an effort to block Burwell's employment as WTW's new CFO and jeopardize his CPA license, Aon has engaged in an unfair trade practice that is harmful to a competitor.

39. As a result of Aon's conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

A. Declaring that Burwell has not misappropriated and/or misused Aon's trade secrets in violation of the DTSA;

B. Declaring that there is no threat that Burwell will misappropriate and/or misuse Aon's trade secrets in violation of the DTSA;

C. Declaring that TWD's employment of Burwell will not inevitably result in the future misappropriation of Aon's trade secrets;

D. Declaring that Burwell has no obligation to Aon, contractual or otherwise, that prevents him from working as WTW's CFO;

E. Declaring that Aon may not prevent or delay Burwell's employment by TWD in the capacity of WTW's CFO consistent with the provisions of the DTSA;

F. Awarding Plaintiffs compensatory damages in amount to be proven at trial;

G. Awarding Plaintiffs their court costs and attorneys' fees; and

H. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated: September 25, 2017

**CLARK HILL PLC**

/s/*Anthony A. Agosta*
Anthony A. Agosta (P57355)
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
Phone: (313) 965-8523
Email: aagosta@clarkhill.com

*Counsel for Plaintiff Michael Burwell*

1378162.5 09/25/2017

**SAUL EWING ARNSTEIN & LEHR LLP**

/s/*George P. Apostolides*
George P. Apostolides
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
Phone: (312) 876-7102
Email: george.apostolides@saul.com

Of Counsel

Gary B. Eidelman (*admission to be filed*)
Edward J. Baines (*admission to be filed*)
500 East Pratt Street, 9th Floor
Baltimore, Maryland 21202
Phone: (410) 332-8975
Phone: (410) 332-8954
Email: gary.eidelman@saul.com
Email: edward.baines@saul.com

*Counsel for Plaintiff Towers Watson Delaware Inc.*

- 18 -